IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SCOTT MULLINS | : | |
|     Plaintiff | : | |
| v | : | Civil Action No. DKC-05-3225 |
| KATHLEEN GREEN, *et al.* | : | |
|     Defendants | : | |

o0o
## **MEMORANDUM**

The above-captioned civil rights action, filed November 28, 2005, alleges that Defendants Kathleen Green, Warden, and Correctional Medical Services have failed to provide Plaintiff with constitutionally adequate medical care. Paper No. 1. Pending are Defendants' separate Motions to Dismiss or for Summary Judgment. Papers No. 18 and 23. Plaintiff has filed oppositions to the motions. Paper Nos. 22 and 25. Upon review of the papers filed, this court finds a hearing in this matter unnecessary. Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendants' motions, construed as motions for summary judgment, shall be denied.

Background

Plaintiff asserts that he has a seizure disorder for which he was prescribed 300 mg of Dilantin. Paper No. 3 at p. 4. He claims that when he arrived at Eastern Correctional Institution the dosage of his medication was increased to 400 mg after he suffered a seizure. *Id*. He alleges that correctional staff fail to open his cell door so he can leave his cell to take his seizure medication, resulting in either his inability to receive the medication or his receiving the medication late. *Id*. at Attachment, p. 1. He asserts that this occurred six times between August 20, 2005, and September 14, 2005. He also asserts that on September 15 and 16, 2005, he was not let out of his cell until it was too late to receive his medication. *Id*. As a result of missing his dose, he claims he had a

seizure in the housing unit and had to be carried to the medical unit where he was treated and returned to his cell approximately one hour later. *Id*. He claims that the seizure he experienced made his condition worse and as a result his medication was increased to 500 mg of Dilantin. *Id*. at p. 2.

Plaintiff asserts that from September 24, 2005, to September 27, 2005, he was not released from his cell to receive his medication and, again, either did not receive it or received it late. *Id.* He claims that on October 3, 2005, he was let out of his cell very late and received his medication nearly one hour beyond the time intended. Plaintiff attempted to resolve the problem by speaking with Lt. Colbourne about officers working in the control center of his housing unit who regularly did not let him out of his cell to receive his medication. *Id.* Plaintiff was assured that his name was on the pill call list posted inside the control center and that the officers would correct the problem. *Id*.

Despite Plaintiff's efforts to have the problem resolved, he was not let out of his cell on October 5, 2005, and, as a result, missed his dose of medication. *Id*. The following day, he was again not let of his cell and was unable to take his medication. *Id*. Plaintiff alleges that on October 11, 2005, he again missed his medication because he was not let out of his cell for pill call. *Id*. at p. 3. The following day, he received his medication late. Plaintiff claims that on the following dates he received no medication because he was not released from his cell: October 21 and 22; November 3 and 9; and December 1 and 2, 2005. *Id*. Plaintiff asserts that as a result, he had a bad seizure on November 12, 2005. *Id*.

Plaintiff asserts that on November 13, 2005, he was given Dilantin to take on his own. *Id*. at p. 4. He claims he began having problems getting his prescription refilled by medical staff and as a result was without medication for eight days. *Id*. On December 30, 2005, Plaintiff had a seizure

2

while going down the steps. *Id*. at p. 5. He claims the fall resulted in an injury to his back and neck, and a cut to his forehead. *Id*. After the fall, Plaintiff claims it took medical staff ten minutes to arrive in the housing unit. *Id*. He states that the head nurse arrived with a neck brace which was taped directly to Plaintiff's neck because it was too small. *Id*. Plaintiff claims the neck brace was painful and caused him to choke. *Id*. Plaintiff was placed on a backboard and taken to the medical unit for evaluation. *Id*. Although Plaintiff claims a discussion took place about sending him to the hospital, a doctor whom he had never seen before came in and cancelled the plans, instead ordering Plaintiff's 24 hour admission to the prison medical unit. *Id*.

Plaintiff claims that when he arrived in the ward he was unstrapped from the backboard by two other inmates who rolled him onto a bed. *Id*. at p. 6. Blood was taken, he was given Motrin for pain, and he was given Dilantin, after being without it for approximately nine days. *Id*. Plaintiff was then escorted to the bathroom by the nurse who left him there. *Id*. He claims that on his way back from the bathroom he fell to the floor and the nurse directed an inmate to pick him up and escort him back to his bed. He further alleges that on the next day he was sent back to his regular housing unit, even though he was still in pain and had not received x-rays for his injuries. *Id*. Plaintiff claims that upon his return to the housing unit he was again not provided with a refill for his seizure medication when he went to pill call on January 1, 2006. *Id*. Plaintiff alleges that despite the injury to his neck and assurances that he would be provided with bed rest to facilitate his recovery, he has been required to walk to meals and continues to experience problems receiving his seizure medication. *Id*. at p. 7.

Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *See Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact

4

issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Analysis

In order to state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that Defendants' acts (or failures to act) amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregard an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Furthermore, mere negligence or malpractice does not rise to a constitutional level entitling a prisoner to civil rights damages. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

"'[B]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.'" *Shakka v. Smith*, 71 F.3d 162, 166

(4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U. S. 1, 9 (1992)). "[A]n injury or condition is 'serious' only if it is 'life threatening or poses a risk of needless pain or lingering disability if not treated at once'". *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)). In determining whether an alleged deprivation of medical care amounts to a constitutional violation, courts must consider the severity of the medical problem, the potential for harm if medical care was denied or delayed, and whether such harm actually resulted from the lack of medical attention. *See Burns v. Head Jailor of LaSalle County*, 576 F. Supp. 618, 620 (N.D. Ill. 1984) (citation omitted).

Plaintiff's allegations against Defendant CMS are based on vicarious liability, otherwise known as the doctrine of *respondeat superior*. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D. Md., October 22, 1992), *citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991). The court's inquiry, however, does not end there.[1] If this court were to construe the complaint as having been filed against appropriate medical personnel, Plaintiff has proffered sufficient evidence to establish that prescribed medication for a serious medical condition was not provided to Plaintiff on numerous occasions, arguably resulting in actual injury.

Defendant Green asserts that the claim against her is also based upon a theory of vicarious liability. That assertion, however, is incorrect. Plaintiff claims that correctional staff has, on a regular basis, refused to allow him to leave his cell to receive his medication. Plaintiff brought the problem to the attention of Defendant Green: his complaint was found to have merit on March 22, 2006. Records submitted by CMS indicate that the problem continued after that date. To the extent

---

[1] Under the law of this Circuit, the court must liberally construe the complaint to address the underlying Eighth Amendment issue presented therein. *See Haines v. Kerner*, 404 U.S. 519 (1972).

that the claims raised against Warden Green concern her role in ensuring that correctional staff facilitate medical directives rather than thwart those efforts, the claims are not based on vicarious liability.[2]

Defendant Green asserts that in response to Plaintiff's administrative remedy complaints concerning his medication, an investigation revealed that he was in fact receiving his medication, but that it was delayed.  Paper No. 23 at Ex. 2 at p. 5.  Plaintiff's administrative remedy request is dated January 3, 2006, and the response finding the complaint meritorious is dated March 22, 2006. *Id*. at p. 1. There is no indication in the response, or in the accompanying documents, as to whether Plaintiff received his medication during the time periods relevant to this case.  Defendant Green further asserts that she defers to medical staff for medical decisions and has not interfered with the course of medical treatment provided.

Defendant Correctional Medical Systems (CMS) asserts that Plaintiff's claim lacks merit inasmuch as he has received medical care which comports with constitutional standards.  Paper No. 18.  It is not disputed by the parties, however, that there have been occasions where he did not receive medication for treatment of his epilepsy.  CMS asserts that: the occasional missed dosages have not harmed Plaintiff;[3] most of the seizures he reports are not witnessed by anyone else and in any event are not grand mal seizures; the problems with delivering medication to Plaintiff are matters beyond their control; and blood levels indicate that he is apparently not taking his

---

[2] Title 42 U.S.C. § 1983 liability on the part of supervisory defendants requires a showing that: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Militier* 896 F. 2d at 854 (internal citations omitted); *see also Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984) (supervisory liability of an inmate's beating by prison guards).

[3] While the assertion that missed dosages have not harmed Plaintiff is made in an affidavit, the same affidavit contains admissions that tests have established that a therapeutic level of anti-seizure medication has yet to be achieved in Plaintiff's case.  Paper No. 23 at Ex. 5.

medication as prescribed. Paper No. 18 at Ex. A. Defendant Green asserts that the problems with Plaintiff's receipt of medication have been addressed when it was brought to the attention of correctional staff. Paper No. 23 at Ex. 5.

There is no evidence presented by either Defendant indicating that interruption in a course of medication prescribed for treatment of epilepsy is harmless. There is no evidence – only speculation – as to why Plaintiff's level of medication as revealed by blood tests dropped below therapeutic levels. Thus, Defendants provide no support for their conclusion that Plaintiff is deliberately refusing to take his medications as prescribed. This court concludes that a genuine dispute of material fact exists regarding: whether the failure to provide anti-seizure medication to Plaintiff as prescribed impacts his health adversely; and whether the failure to facilitate delivery of Plaintiff's medication has been adequately addressed. Those disputed facts foreclose summary judgment in favor of Defendants.

Accordingly, by separate order which follows, the Motions to Dismiss or for Summary Judgment shall be denied. Plaintiff will be granted an opportunity to file a Motion for Appointment of Counsel and, upon appointment, counsel will be granted an opportunity to amend the complaint.


\_\_\_\_\_7/11/06_____  _____/s/_____
Date                                          DEBORAH K. CHASANOW
                                              United States District Judge